## ROLAND WILLIAMS v. STATE.

No. 180.   Opinion Filed March 7, 1911.

(113 Pac. 1060.)

JUDGES—Disqualification—Election of Special Judge—Validity. Prior to the passage of the act approved March 22, 1909 (article 6, c. 24 Snyder's Comp. Laws 1909), no provision having been made by law whereby a judge pro tempore could be elected in the event of the disqualification of the regular judge, a special judge elected by the members of the bar over the defendant's objection was not a judge either de jure or de facto, and a trial had before him was a nullity.

(Syllabus by the Court.)

*Appeal from District Court, Atoka County; James H. Chambers, Special Judge.*

Roland Williams was convicted of larceny, and appeals. Reversed and remanded.

*J. G. Ralls,* for appellant.
*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, PRESIDING JUDGE. It appears from the record that when this case was called for trial Hon. A. T. West, judge of the Seventeenth judicial district, being disqualified to sit in this case, announced that it would be necessary for the bar to elect a special judge to try this case, whereupon Mr. J. G. Ralls, attorney for appellant, requested that Mr. J. H. Gernert, who acted as special judge on a former trial of this case and who

was present in the courtroom, be permitted to preside at the present trial, which motion was by the court overruled, and the court then ordered that the bar proceed to elect a special judge to try the cause, to all of which appellant objected and excepted. The bar then proceeded to elect Mr. J. H. Chambers as special judge, and he presided during the trial of this case. Counsel for appellant in his brief says:

"The district judge had no authority to require the bar to elect a special judge, and the election held under said order, being without authority, was void. The special judge elected had no authority whatever and all actions taken are absolutely void. That part of section 9, art. 7, Const., providing for the election of a special judge, is not self-executing. It requires an act of the Legislature to give it effect."

Passing upon this precise question in the case of *Cowart v. State,* 4 Okla. Cr. 122, 111 Pac. 672, Richardson, Judge, speaking for the court, said :

"We think the contention sound, and that plaintiff in error's objection should have been sustained. The constitutional provision is as follows: 'In the event any judge shall be disqualified for any reason from trying any case in his district, the parties to such case may agree upon a judge *pro tempore* to try the same, and if such parties cannot agree, at the request of either party a judge *pro tempore* may be elected by the members of the bar of the district, present at such term. If no election for judge *pro tempore* shall be had, the Chief Justice of the state shall designate some other district judge to try such case.' In our opinion the holding of such an election necessitates the provision of some method of voting, of canvassing and tabulating the votes cast, and of declaring and recording the result; and the votes must be canvassed and the result determined and declared by some person or persons designated by law. Provision must be made for the time and place of holding the election, and the notice to be given thereof; and some one must be vested with the authority to determine who is entitled to vote in such election. But the Constitution makes provision for none of these matters. It merely declares that at the request of either party a judge *pro tempore* may be elected. It does not provide the machinery or procedure for holding the election. It contains no provision for notice to the

5 Cr.—10

bar or any other person of the time and, place of holding it; no provision insuring its fairness, regularity, and legality; no provision insuring the correct declaration of the result. No record is required to be made or kept, and no person is authorized or empowered to determine and declare the result. Without a requirement of notice that such an election is to be held and the time thereof with no method of voting provided for, with no person designated to conduct the election and to pass upon and determine the right of any person to vote therein, no one authorized to declare the result, no record required to be made, no minimum limit as to the number whose participation may constitute an election, no provision as to whether a mere plurality or a majority vote is required to·elect, and no restrictions upon the right of the interested attorneys to participate therein, all sorts of fraud and wrongdoing could easily be perpetrated in an attempted election, and the appellate court could have no means of telling and no rule for determining whether the election was fairly, honestly, and legally, conducted, and whether the person who presided as special judge in the trial was in fact elected. An unseemly scramble for advantage in the election might easily ensue; and one side or the other, by employing three or four attorneys, might by their votes control the election and place on the bench as special judge an unfit, incompetent, or partisan person. In our opinion by every declared test this provision is not self-executing. It grants the power and creates the right to elect a special judge, but it provides no means or procedure bv which the power may be exercised or the right enforced or protected, and the provision of such means and procedure is necessary to give it effect. *Ex parte Wagner*, 1 Okla. Cr. 148, 95 Pac. 435; *Id.*, 21 Okla. 33, 95 Pac. 435. It is probable that had the defendant and the state each consented or agreed to such an election, or participated therein without entering an objection, that might be held to be an agreeing upon a judge *pro tempore* within the meaning of the Constitution; that is, it might be held to be an agreement that such person as might be thus designated should be the judge *pro tempore*. But no such question arises in this case, for plaintiff in error specifically objected to holding the election and refused to participate therein; and the judge *pro tempore* then and there elected was without right or power to try the case. As we view the matter, there being no agreement upon a judge *pro tempore* to try the case as provided by the Constitution, and no provision

made by law whereby an election could be held, Judge Woods was not a judge either *de jure* or *de facto,* and the trial was a nullity and the judgment void." ;

We still entertain the the same views expressed in the Cowart case. The judgment of the lower court is therefore reversed and remanded.

ARMSTRONG and DOYLE, JUDGES, concur.